IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES NICKERMAN, *et al.*, | No. C 06-2555 SI |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF KASIE VERDOT WITH PREJUDICE FOR FAILURE TO MAKE OUT *PRIMA FACIE* CASE** |
| v. | |
| REMCO HYDRAULICS, INC., *et al.*, | |
| Defendants. | |

On June 15, 2007, the Court heard argument on defendants' motion to dismiss plaintiff Kasie Verdot. After consideration of the parties' papers and arguments, the Court hereby GRANTS defendants' motion for the reasons set forth below.[1]

**BACKGROUND**

Plaintiffs filed suit in Mendocino County Superior Court on December 23, 2004, against Remco Hydraulics, Inc. ("Remco"), M-C Industries, Whitman Corporation, and Pneumo Abex Corporation. Plaintiffs are California and Nevada residents who seek recovery for injuries allegedly suffered as a result of hazardous chemicals disposed at the Remco facility in Willits, California. First Amended Complaint at ¶¶ 1, 2, 12. The complaint alleges negligence, intentional infliction of emotional distress, strict liability, nuisance, fraudulent concealment, battery, and trespass. Defendant Whitman's

---

[1] The Court heard a combined argument on the instant motion and a similar motion to dismiss certain plaintiffs for failure to make out a *prima facie* case in the related action *Avila et al. v. Willits Remediation Trust*, C 99-3941 SI. Plaintiff Verdot did not file an opposition to the motion in this case. However, plaintiffs did file an opposition and supporting declarations in the *Avila* action. At the hearing, plaintiffs' counsel – who are the same in both actions – stated that they wished to rely on the *Avila* opposition papers to oppose the instant motion.

predecessor ceased ownership and operation of the Remco facility in 1977, and defendant Pneumo Abex's predecessor ceased ownership and operation of the Remco facility in November 1988. *Id*. ¶¶ 9-10.

Plaintiff Kasie Verdot lived in Willits from 1996 to 1998, and for nine months in 2000. *See* Tate Decl. Ex. A.  At a case management conference held on January 26, 2007, the Court ordered plaintiff Verdot to submit by March 10, 2007, a *prima facie* showing of exposure and medical causation in compliance with the requirements set forth Case Management Order No. 4 ("CMO No. 4") in the related case, *Avila et al. v. Willits Environmental Remediation Trust et al.*, C 99-3941 SI.  CMO No. 4 required that each of the *Cottle* plaintiffs[2] submit percipient and expert affidavits setting forth "all facts" supporting such plaintiff's claimed exposure to hazardous substances discharged or released by defendants' predecessors. CMO No. 4 at 3.  In addition, the Court required a written statement "from a physician, medical and/or other expert" stating "a description of each injury, illness or condition for which such Plaintiff seeks recovery in this action," "the identity of the chemical to which such Plaintiff was exposed," a "statement that there is a reasonable medical probability that the exposure caused each injury, illness or condition referred to above," and a "statement of the scientific and medical basis upon which the expert's opinion is based." *Id*. at 3-4.

Plaintiff Verdot failed to provide an affidavit of exposure. Plaintiffs' expert Dr. Levin expressly declined to render an opinion that there is a connection between plaintiff Verdot's alleged injuries and Remco contamination.

**DISCUSSION**

For a plaintiff to succeed on a claim for personal injury, he or she must prove, *inter alia*, that the defendant's actions were a cause in fact, or an actual substantial factor in the cause, of the plaintiff's injuries. *See Jones v. Ortho Pharm. Corp.*, 163 Cal. App. 3d 369, 402-03 (Cal. App. 1985). Where a plaintiff alleges that hazardous substances were a "substantial factor" in causing his or her alleged injury, that plaintiff must prove exposure to the hazardous substances, *see Ferris v. Gatke Corp.*, 107

---

[2] The *Cottle* plaintiffs are those individuals who either never lived in Willits, or only lived in Willits after 1988.

2

Cal. App. 4th 1211, 1220 n.4 (Cal. App. 2003), and also must show "to a reasonable medical probability based upon competent expert testimony" that such exposure was the cause, or a substantial factor in the cause, of the injury. *See Jones*, 163 Cal. App. 3d at 402. "Mere possibility alone is insufficient to establish a *prima facie* case" of medical causation because "[t]here can be many possible 'causes,' indeed, an infinite number of circumstances which can produce an injury or disease." *Id*.

The California Supreme Court has held that the cost of medical monitoring is a compensable item of damages "where the proofs demonstrate, through reliable medical expert testimony, that the need for future monitoring is a reasonably certain consequence of a plaintiff's toxic exposure and that the recommended monitoring is reasonable."

> In determining the reasonableness and necessity of monitoring, the following factors are relevant: (1) the significance and extent of the plaintiff's exposure to chemicals; (2) the toxicity of the chemicals; (3) the relative increase in the chance of onset of disease in the exposed plaintiff as a result of the exposure, when compared to (a) the plaintiff's chances of developing the disease had he or she not been exposed, and (b) the chances of the members of the public at large of developing the disease; (4) the seriousness of the disease for which the plaintiff is at risk; and (5) the clinical value of early detection and diagnosis.

*Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1009 (Cal. 1993).[3] The *Potter* court emphasized that "[t]he five factors provide substantial evidentiary burdens for toxic exposure plaintiffs and do not, as Firestone insists, allow medical monitoring damages to be based solely upon a showing of an increased but unquantified risk resulting from exposure to toxic chemicals." *Id*.

The California Supreme Court has also held that in order to recover for fear of developing cancer as a result of exposure to toxic substances, a plaintiff must first prove the elements of a negligence cause of action, and also, *inter alia*, "establish the reasonableness of his or her fear of cancer. *Id*. at 989. "A carcinogenic or other toxic ingestion or exposure, without more, does not provide a basis for fearing future physical injury or illness which the law is prepared to recognize as reasonable." *Id*. The Court added that "emotional distress caused by the fear of a cancer that is not probable should generally not be compensable in a negligence action." *Id*. at 990.

Defendants move to dismiss with prejudice plaintiff Kasie Verdot for failure to comply with

---

[3] As defendants correctly note, medical monitoring is not a separate cause of action. Instead, medical monitoring costs are recoverable damages where the other elements of a negligence or other tort claim are proven. *Id*. at 1005.

3

CMO No. 4. Plaintiff did not provide an exposure affidavit as required by CMO No. 4. In addition, plaintiffs' expert, Dr. Levin, was unable to render any opinion about whether there is a connection between plaintiff's alleged injuries and Remco contamination. Dr. Levin's March 13, 2007 letter states, in relevant part,

> Due to the paucity of medical record documentation of recurrent infections, I can not opine to a reasonable degree of medical certainty on the impact of this child's exposure to the Remco contaminants.

Tate Decl. Ex. B. Dr. Levin's March 13, 2007 letter also does not provide any opinion regarding whether plaintiff Verdot is at risk of developing a disease in the future, or whether she suffers emotional distress related to a fear of future disease.

Plaintiff's four page opposition[4] responds that plaintiff has "sufficient grounds to bring" claims for "medical monitoring" and "negligence based on fear of disease." Plaintiff thus appears to concede that the Court should dismiss her *current* personal injury claims. With respect to the "medical monitoring" and "negligence based on fear of disease" claims, plaintiff relies on a May 28, 2007 letter from Dr. Levin, and portions of Dr. Levin's deposition. Plaintiff also requests the Court to take "judicial notice" of Dr. Levin's February 13, 2007 report filed in *Avila*, and of the "facts and exhibits" presented in the *Avila* plaintiffs' opposition to defendants' motion for summary judgment on the intentional infliction of emotional distress claims.[5] Aside from highlighting a few statements from Dr. Levin's letter and report, as well as Dr. Levin's deposition, plaintiff does not attempt to show how she has met the showing required by CMO No. 4.

Dr. Levin's May 28, 2007 letter states:

> Re: Need for medical monitoring in *Avila v. Willits Remedial Trust et al.* plaintiffs for whom the record does not allow me at this time to form an opinion to a reasonable degree of medical certainty regarding the impact of the person's exposure to the Remco contamination sites and their present state of health.
>
> Based upon my training, education, experience and the nature of their toxic exposure it is my opinion to a reasonable degree of medical certainty that medical monitoring is

---

[4] As discussed at the June 15, 2007 hearing, plaintiffs' counsel stated that they intended to rely on the opposition to defendants' motion to dismiss filed in *Avila*.

[5] To the extent plaintiff requests the Court to take judicial notice of the "facts" contained within these documents, the Court DENIES the request. The Court will consider whether these documents satisfy plaintiff's *prima facie* showing.

4

> warranted for the plaintiffs listed below. This is because it is reasonably certain that they will develop a disease in the future as a direct consequence of their exposure to the Remco contamination site and that this disease would not have developed but for the exposure to the Remco contamination site. This medical monitoring is available and is beyond that which an individual should pursue as a matter of good sense and foresight.

May 28, 2007 letter from Dr. Levin.[6]

There are numerous problems with plaintiff's arguments and evidence. Plaintiff failed to comply with CMO No. 4 because she did not provide an exposure affidavit. In addition, plaintiff did not submit information and evidence regarding claims for medical monitoring or negligence based on fear of disease by the March 10, 2007 deadline. CMO No. 4 required, *inter alia*, a written statement "from a physician, medical and/or other expert" stating "a description of each injury, illness or condition for which such Plaintiff seeks recovery in this action," and a "statement of the scientific and medical basis upon which the expert's opinion is based." CMO No. 4 at 3-4. Plaintiff's claims for medical monitoring and negligence based on fear of disease were encompassed in the First Amended Complaint,[7] and thus should have been addressed in plaintiff's *prima facie* showing. Dr. Levin's March 13, 2007 letter does not address plaintiff Verdot's risk of developing a disease in the future, nor does it discuss plaintiff's emotional distress related to a fear of developing disease.

Plaintiff attempts to cure this deficiency with Dr. Levin's May 28, 2007 letter. Plaintiff did not seek leave of Court to file the May 28, 2007 letter, and plaintiff has provided no explanation of why she was unable to submit Dr. Levin's letter by the March 10, 2007 deadline. Plaintiff has been aware of the need to comply with CMO No. 4 since the January 2007 case management conference.[8] The Court will not countenance further unexplained and unjustified failures to comply with agreed-upon case

---

[6] This letter, which was filed in the *Avila* action, lists the names of thirteen of the *Avila Cottle* plaintiffs. At the June 15, 2007 hearing, plaintiff's counsel stated that Dr. Levin would provide the same opinion regarding medical monitoring and fear of cancer for plaintiff Verdot. For purposes of the instant motion, the Court will assume that Dr. Levin would provide such an opinion, and treats Dr. Levin's May 28, 2007 letter as if he had provided such an opinion as to plaintiff Verdot.

[7] The FAC alleges that "[p]laintiffs have suffered and will continue to suffer from great physical, mental, and nervous pain and suffering, including fear of cancer, and Plaintiffs are informed and believe and thereon allege that they will be compelled to seek further treatment in the future for the care of said injuries and to incur further reasonable bills for the same." FAC ¶ 94; *see also id.* at ¶ 105 ("fear of cancer").

[8] Plaintiffs' counsel, who also represent plaintiffs in *Avila*, have been aware of the requirements of CMO No. 4 since March 2005, when CMO No. 4 was filed in the *Avila* action.

5

1 management deadlines. Accordingly, the Court STRIKES the May 28, 2007 letter.[9]

2 Even if the Court considered Dr. Levin's May 28, 2007 letter, however, this letter does not satisfy plaintiff's *prima facie* showing for several reasons. Dr. Levin's one page letter asserts, without setting forth any supporting facts or data, that it is his opinion "to a reasonable degree of medical certainty that medical monitoring" is warranted for certain plaintiffs in the *Avila* action. Dr. Levin's May 28, 2007 letter does not, as required by CMO No. 4, include a "statement of the scientific and medical basis upon which the expert's opinion is based." CMO No. 4 at 4. The complete absence of any explanation as to how Dr. Levin reached his opinion also violates Federal Rule of Evidence 702, which requires expert testimony to be "based upon sufficient facts or data." Fed. R. Evid. 702; *see also Clausen v. M/V New Carissa*, 339 F.3d 1049, 1058 (9th Cir. 2003) (district court can exclude expert testimony if expert fails to provide explanation of why alternative hypothesis was ruled out).

At the hearing, plaintiff's counsel asserted that plaintiff had met the *prima facie* showing because there is extensive evidence of exposure and contamination in the Willits area. However, regardless of whether other plaintiffs have submitted evidence of exposure, plaintiff Verdot failed to provide her own affidavit regarding exposure as required by CMO No. 4. Further, plaintiff has failed to submit expert or medical evidence regarding causation. Plaintiff's counsel contended that plaintiff has shown causation because tests conducted on four *Avila* plaintiffs' blood revealed dioxin; however, the blood tests were *not* conducted on plaintiff Verdot's blood. *See* Levin Depo. at 202.[10] Finally, plaintiff relies on Dr. Levin's deposition testimony in which he stated that four months of exposure to toxic substances was sufficient to cause injury. Plaintiff's reliance on this statement is unavailing, however, because Dr. Levin also testified in his deposition that his opinion was limited to those plaintiffs who "had enough exposure to make – be able to make an opinion to a reasonable medical probability." *Id*. at 335. As Dr. Levin's March 13, 2007 letter makes clear, he expressly did not render an opinion "to a reasonable

---

[9] By separate order filed in the *Avila* case, the Court has ordered the May 28, 2007 letter stricken from the record. The Court also finds that allowing plaintiffs to submit Dr. Levin's May 28, 2007 letter would prejudice defendants. Defendants deposed Dr. Levin on April 26 and 27, 2007 regarding the *Cottle* plaintiffs about whom Dr. Levin had rendered an opinion.

[10] The deposition excerpts provided by defendants do not identify the plaintiffs whose blood was tested. However, defendants assert, and plaintiff does not dispute, that plaintiff Verdot's blood was not tested.

6

medical probability" as to plaintiff Verdot.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion to dismiss plaintiff Verdot's claims with prejudice. (Docket No. 89).

**IT IS SO ORDERED.**

Dated: June 19, 2007

SUSAN ILLSTON
United States District Judge