**United States District Court**
For the Northern District of California

1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    CHARLES NICKERMAN, *et al.*,                     No. C 06-2555 SI

9              Plaintiffs,                            **ORDER GRANTING DEFENDANTS'**
                                                      **MOTION FOR SUMMARY JUDGMENT**
10     v.                                             **ON ALL OF PLAINTIFFS ESTER**
                                                      **WELLS', BRYAN WELLS', AND DEREK**
11   REMCO HYDRAULICS, INC., *et al.*,                **WELLS' CLAIMS EXCEPT ESTER**
                                                      **WELLS' CLAIM FOR LOSS OF**
12             Defendants.                            **CONSORTIUM**
                                         /
13

14          Defendants' motion for summary judgment is scheduled for a hearing on September 28, 2007.

15   Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution

16   without oral argument, and VACATES the hearing.  After consideration of the parties' papers, the Court

17   hereby GRANTS defendants' motion for the reasons set forth below.

18

19                                   **BACKGROUND**

20          Plaintiffs filed this action against Remco Hydraulics, Inc. ("Remco"), M-C Industries, Whitman

21   Corporation, and Pneumo Abex Corporation.  Plaintiff Ester Wells is married to Michael Wells, and they

22   have two sons, Bryan and Derek Wells.  All four members of the Wells family are plaintiffs in this

23   lawsuit.  Michael Wells has multiple sclerosis, and states that he lived in Willits from February 1963

24   to August 1965.  *See* M. Wells Questionnaire Response at 8, 40.  Plaintiffs allege that Michael Wells

25   developed multiple sclerosis, as well as other health problems, as a result of exposure to Remco

26   chemicals.  Ester, Bryan and Derek Wells have never lived in Willits, and they do not claim exposure

27   to any Remco chemicals.  *See* Ester Wells' Questionnaire Response at 40, 15-16 (Simpich Decl. Ex. 11);

28   Bryan Wells' Questionnaire Response at 4, 11-13 (Simpich Decl. Ex. 12); Derek Wells' Questionnaire

1  Response at 4, 11-13 (Simpich Decl. Ex. 13).

2  In the first amended complaint the Wells plaintiffs allege claims for negligence, negligence *per*

3  *se*, strict liability, nuisance, fraudulent concealment, gross negligence, battery, toxic trespass, intentional

4  infliction of emotional distress, negligence causing fear of cancer, and "negligent undertaking."  FAC

5  ¶¶ 85, 94, 99, 105, 108, 111, 112, 117, 128, 135.  Defendants have moved for summary judgment on all

6  claims asserted by Ester, Bryan and Derek Wells, except for Ester Wells' claim for loss of consortium.[1]

7  Plaintiffs do not oppose the motion except as to plaintiffs' claims for negligent infliction of emotional

8  distress.[2]

9

10  **LEGAL STANDARD**

11  Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories,

12  and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

13  material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

14  56(c).

15  In a motion for summary judgment, "[if] the moving party for summary judgment meets its

16  initial burden of identifying for the court those portions of the materials on file that it believes

17  demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so

18  that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts

19  showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors*

20  *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  In

21  judging evidence at the summary judgment stage, the Court does not make credibility determinations

22  or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving

23  party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

24

25  [1]  Defendants have not moved for summary judgment on Michael Wells' claims.

26  [2]  Plaintiffs state that they wish to "withdraw" their other claims, presumably without prejudice.
This is improper.  Defendants have submitted uncontroverted evidence – in the form of the Wells'
plaintiffs' own questionnaire responses – that Ester, Bryan and Derek Wells never lived in Willits, never
27  owned any property in Willits, and were never exposed to any Remco chemicals.  Defendants have
demonstrated that they entitled to summary judgment on all of the claims that plaintiffs now wish to
28  "withdraw," and accordingly the Court GRANTS defendants' motion as to these claims.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   *Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).  The evidence

2   presented by the parties must be admissible.  Fed. R. Civ. P. 56(e).  Conclusory, speculative testimony

3   in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary

4   judgment.  *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

6   **DISCUSSION**

7   Defendants move for summary judgment on plaintiffs' claims for negligent infliction of

8   emotional distress.  Plaintiffs allege that they have suffered emotional distress as a result of observing

9   Michael Wells' struggles with his health issues.  Ester Wells has submitted a declaration and

10  questionnaire responses stating that she has suffered anxiety and depression as a result of having to

11  become the primary caregiver for her husband, as well as the primary income earner:

> I have been treated and medicated for depression caused by anxiety and concern for my husbands' health and well-being, having to deal with his health problems, symptoms and personality/mood swings and the increased responsibilities this has placed on me personally, as well as on my family.  My husbands' inabilities and struggles to fulfill his spousal responsibilities . . . as well as his parenting and professional career responsibilities has caused him significant distress, emotionally and psychologically and has contributed to his bouts of severe depression.  This has caused a significant amount of stress, anxiety, and depression for me and both my sons.

Supplemental Ester Wells Declaration at 3 (Simpich Decl. Ex. 11).  Bryan and Derek Wells have

submitted similar statements regarding their emotional distress related to their father's health.  *See, e.g.*,

Supplemental Bryan Wells Questionnaire at #58 ("The emotional and psychological injuries have been

experienced because of having to watch my father endure his many medical conditions, mental and

emotional conditions.") (Simpich Decl. Ex. 12); Derek Wells Questionnaire ("chronic depression" and

"anger," "I have dealt with the symptoms of my father's health conditions for many years of my life.

I have been treated for chronic depression for many years.") (Simpich Decl. Ex. 13).

"The negligent causing of emotional distress is not an independent tort, but the tort of

negligence.  The traditional elements of duty, breach of duty, causation, and damages apply." *Burgess*

*v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992) (internal quotation and citations omitted).  In *Burgess*,

the California Supreme Court clarified the differences between the "bystander" and "direct victim"

theories of negligent infliction of emotional distress:

3

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> [T]his court has circumscribed the class of bystanders to whom a defendant owes a duty to avoid negligently inflicting emotional distress. These limits are set forth in *Thing* [*v. La Chusa*, 48 Cal. 3d 644 (1989)] as follows: "In the absence of physical injury or impact to the plaintiff himself, damages for emotional distress should be recoverable only if the plaintiff: (1) is closely related to the injury victim, (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim and (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness."
>
> In contrast, the label "direct victim" arose to distinguish cases in which damages for serious emotional distress are sought as a result of a breach of duty owed the plaintiff that is "assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." In these cases, the limits set forth in *Thing*, supra, 48 Cal.3d 644, have no direct application. Rather, well-settled principles of negligence are invoked to determine whether all elements of a cause of action, including duty, are present in a given case.

*Id.* at 1072-1073 (internal citations omitted).

It is difficult to decipher the theory underlying plaintiffs' claims. Plaintiffs concede, as they must, that they cannot maintain a claim as "bystanders" because they were not present at the scene of the injury-producing event at the time it occurred, which was Michael Wells' alleged exposure to Remco chemicals between February 1963 to August 1965. Opposition at 16-17. *See Burgess*, 2 Cal. 4th at 1073 ("bystander liability is premised upon a defendant's violation of a duty not to negligently cause emotional distress to people who observe conduct which causes harm to another"); *see also Wooden v. Raveling*, 61 Cal. App. 4th 1035, 1037 (1998) ("'Bystander' cases are cases in which the plaintiff was not physically impacted or injured, but instead witnessed someone else being injured due to defendant's negligence.").

Instead, plaintiffs assert that they are "direct victims." "Under the 'direct victim' theory, the applicable duty is not the general duty not to cause emotional distress to bystanders who observe harm to others. In 'direct victim' cases, the duty owed is a duty owed by the specific defendant to the specific plaintiff." *Robinson v. United States*, 175 F. Supp. 2d 1215, 1225 (E.D. Cal. 2001). Plaintiffs argue that defendants violated various statutes and orders related to disposal of toxic chemicals or wastes, and that by knowingly engaging in these violations, defendants breached their duty "not to cause injury stemming from such violation of environmental regulations." Opposition at 18.

The problem with plaintiffs' theory is that plaintiffs have not, and cannot, identify a duty owed by defendants *specifically* to the Wells plaintiffs, and plaintiffs do not cite any authority supporting their

4

**United States District Court**
For the Northern District of California

1  novel theory of "direct victim" liability.  To the contrary, the cases consistently hold that to recover

2  emotional distress damages as a direct victim, a plaintiff must show that some relationship existed

3  between the plaintiff and the defendant to create a duty.  *See, e.g.*, *Huggins v. Longs Drugs Stores Cal.*,

4  6 Cal. 4th 124, 133 (1993) (pharmacist who prescribed incorrect dosage for infant owed duty to infant

5  patient, but not the infant's parents: "Because plaintiffs were not the patients for whom defendant

6  dispensed the prescribed medication, they cannot recover as direct victims of defendant's negligence.");

7  *Christensen v. Superior Court*, 54 Cal. 3d 868, 891 (1991) (mortuary and crematory defendants

8  "assumed a duty to the close relatives of the decedents for whose benefit they were to provide funeral

9  and/or related services" and "thereby created a special relationship obligating them to perform those

10  services in the dignified and respectful manner the bereaved expect of mortuary and crematory

11  operators.").

12  　　　*Potter v. Firestone Tire and Rubber Company*, 6 Cal. 4th 965 (1993), a case repeatedly cited by

13  plaintiffs, does not hold otherwise.  In *Potter*, the California Supreme Court considered "whether

14  emotional distress engendered by a fear of cancer or other serious physical illness or injury *following*

15  *exposure to a carcinogen* or other toxic substance is an injury for which damages may be recovered in

16  a negligence action in the absence of physical injury." *Id*. at 973 (emphasis added).  The Court found

17  that such damages were available because the traditional tort elements of negligence were met:

18  　　　Those limits on recovery for emotional distress caused by the negligent conduct of
another do not aid Firestone here, however.  Firestone did violate a duty imposed on it
19  　　　by law and regulation to dispose of toxic waste only in a class I landfill and to avoid
contamination of underground water. *The violation led directly to plaintiffs' ingestion*
20  　　　*of various known and suspected carcinogens*, and thus to their fear of suffering the very
harm which the Legislature sought by statute to avoid.  Their fear of cancer was
21  　　　proximately caused by Firestone's unlawful conduct which threatened serious physical
injury.

22

23  *Id*. at 985 (emphasis added); *see also Klein v. Children's Hosp. Med. Ctr.*, 46 Cal. App. 4th 889, 894

24  (1996) ("'Exposure' cases are typified by *Potter* . . . , wherein plaintiffs who have not suffered any

25  physical injury claim emotional distress from fear of contracting a disease because of their exposure

26  thereto due to the defendant's misconduct.").

27  　　　Plaintiffs make much of the fact that the *Potter* court held that Firestone had violated a duty

28  "imposed on it by law and regulation to dispose of toxic waste only in a class I landfill and to avoid

**United States District Court**
For the Northern District of California

1  contamination of underground water." *Potter*, 6 Cal. 4th at 985.  However, Firestone breached that duty

2  to the *Potter* plaintiffs because those plaintiffs were exposed to the contaminated water.  Here, the Wells

3  plaintiffs admit that they were never exposed to any Remco contamination, and instead they are claiming

4  emotional distress as a result of witnessing Michael Wells' struggles with his health issues.  Despite

5  plaintiffs' attempts to characterize their claims as falling under the "direct victim" theory, the claims are

6  really bystander claims.  Under either theory, plaintiffs' claims fail and defendants are entitled to

7  summary judgment.

9  **CONCLUSION**

10  For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants'

11  motion for summary judgment. (Docket No. 92).  The Court finds it unnecessary to address defendant's

12  evidentiary objections because the Court's disposition of defendants' motion does not rely on any of the

13  disputed evidence.

14  The Court DENIES plaintiffs' request for judicial notice.  (Docket No. 112).  Plaintiffs request

15  that the Court take "judicial notice" of the contents of a number of documents attached to the Simpich

16  Declaration.  Plaintiffs' request is improper under Federal Rule of Evidence 201, as the contents of these

17  documents are the subject of dispute between the parties.[3]

19  **IT IS SO ORDERED.**

21  Dated: September 27, 2007

SUSAN ILLSTON
United States District Judge

25  [3] One of the documents at issue is the Findings of Fact and Conclusions of Law from *People v. Remco*, C 96-283 FMS.  The Ninth Circuit has held that courts may not take judicial notice of findings of fact from other cases. *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003).  Plaintiffs also assert that these findings of fact and conclusions of law have a collateral estoppel effect in this case.  However, plaintiffs have not shown that the specific issues litigated in *People v. Remco* are at issue in this case, or relevant to the instant motion.  Accordingly, the Court finds that the doctrine of collateral estoppel does not apply.

6