IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES NICKERMAN, *et al.*, | No. C 06-2555 SI |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| REMCO HYDRAULICS, INC., *et al.*, | |
| Defendants. | |

The parties' cross-motions for summary judgment are scheduled for a hearing on November 16, 2007. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. After consideration of the parties' papers, the Court hereby GRANTS defendants' motion and DENIES plaintiffs' motion. The case management conference scheduled for November 16, 2007 at 2:30 p.m. remains on calendar.

**BACKGROUND**

**I.   Intentional infliction of emotional distress allegations**

Plaintiffs' third cause of action alleges a claim for intentional infliction of emotional distress ("IIED"). Plaintiffs[1] allege that defendants have engaged in extreme and outrageous conduct by

---

[1] In a stipulation filed January 10, 2007, plaintiffs Laurie Jahoda and Judy Brady Fogel dismissed their claims with prejudice. In an order filed June 19, 2007, the Court dismissed plaintiff Katie Verdot for failure to make out a *prima facie* case. In addition, in an order filed September 27, 2007, the Court granted summary judgment in favor of defendants on all claims alleged by Ester Wells, Bryan Wells and Derek Wells, except for Ester Wells' claim for loss of consortium. As a result of these orders and stipulations, thirteen plaintiffs remain who allege claims for intentional infliction of emotional distress.

intentionally subjecting plaintiffs to hazardous substances and failing to warn plaintiffs of the types and releases of toxic chemicals. First Amended Compl. ¶¶ 97-101. Plaintiffs allege that as a result of this conduct, plaintiffs have suffered and continue to suffer "severe anxiety, worry, mental and emotional distress." *Id.* ¶ 101.

## II. Discovery

### A. April 5, 2007 Discovery Order

After plaintiffs provided inadequate responses to defendants' interrogatories and requests for production, defendants moved to compel. The Court granted defendants' motion, finding that plaintiffs' responses were "wholly deficient." April 5, 2007 Order re: Discovery at 1. With regard to defendants' document requests, the Court found that it was "completely improper to direct defendants to masses of unspecified documents." With respect to the interrogatory responses, the Court found that plaintiffs had improperly "refer[red] defendants to thousands of unspecified pages of documents, and, for some interrogatories, provide[d] substantive answers that lack[ed] the specific details requested." As one example, the Court noted that plaintiffs had raised frivolous objections and failed to properly respond to an interrogatory seeking facts, evidence and documents showing that defendants knew that their activities exposed plaintiffs to hazardous substances.

The Court struck plaintiffs' deficient responses, and ordered plaintiffs to provide amended responses as follows: "In response to defendants' document requests, plaintiffs shall identify or produce responsive documents in their possession, custody or control, or they shall state that they do not have any responsive documents. In response to defendants' interrogatories, plaintiffs' shall provide substantive answers that directly and specifically respond to the interrogatories at issue." Order at 3. After receiving an extension of time from defendants, plaintiffs provided amended responses on May 22, 2007.

### B. Interrogatories

Defendants propounded three interrogatories regarding plaintiffs' claims for intentional infliction of emotional distress, Interrogatory Nos. 10-12. These interrogatories asked: "For each Plaintiff

2

asserting a claim for intentional infliction of emotional distress, <u>IDENTIFY any all facts, evidence and DOCUMENTS</u> showing that each DEFENDANT"

- "directed the alleged conduct described [in your Complaint] at each such Plaintiff or engaged in such alleged conduct in each such Plaintiff's presence." (Interrogatory Nos. 10)

- "was aware of each Plaintiff's presence when allegedly engaging in the conduct described in [the intentional infliction of emotional distress portion] of YOUR COMPLAINT." (Interrogatory No. 11)

- "was aware or substantially certain that each Plaintiff would suffer severe emotional injury when allegedly engaging in conduct described in [the intentional infliction of emotional distress portion] of YOUR COMPLAINT." (Interrogatory No. 12).

McShane Decl. Ex. 2.

With minor variations, six of the remaining plaintiffs answered Interrogatory No. 10 by stating:

> Defendants, through their actions and omissions, intentionally caused [individual plaintiff] to suffer emotional distress. The actions and omissions are contained in the depositions of former Remco employees, documents produced to Defendants in the related '*Avila*' case and documents contained in litigation with the City of Willits, litigation with the Defendants' insurance carriers, and releases [sic] from the Water Board, Air Board and the City of Willits.

McShane Decl. Exs. 7, 10, 11, 15, 16, and 22 (Craig Carbrey; Eljenia Haggard, Mark Haggard; Charles Nickerman; Joan Palango; and Michael Wells).

With minor variations, the remaining seven plaintiffs answered Interrogatory No. 10 by stating:

> While Plaintiff played around common areas such as the drainage ditch across from the Baechtel Elementary School, Luna's apartments or the Baechtel Creek, employees of the REMCO would warn Plaintiff away and instructed *him* not to be present while they dumped hazardous wastes along the south side of the REMCO plant.

*Id*. Exs. 8, 9, 12, 13, 14, 17, and 18 (Carolyn Crowell; Roy Elliot; Irene Hall; Paula Magana; Lorraine Montano; Jason Verdot; and Paulina Verdot) (emphasis added).[2]

Plaintiffs provided a variety of responses to Interrogatory No. 11, which asked for evidence demonstrating that defendants "were aware of each Plaintiff's presence" when allegedly engaging in the conduct giving rise to plaintiffs' IIED claims. For example, plaintiff Craig Carbrey responded that

---

[2] The Court makes two related observations regarding this interrogatory response. First, the use of "him" for both male and female plaintiffs suggests that plaintiffs' interrogatory responses were not individually tailored. Second, the Court notes that plaintiffs provided a virtually identical interrogatory response for Bryan Wells, *see* McShane Decl. Ex. 19, despite the fact that Bryan Wells stated on several questionnaires that he never lived in or visited Willits. *See id*., Ex. 46 at 4, 11-13, 15, 48.

3

defendants "were or should have been aware of the existence of each Plaintiff's presence in Willits near the Remco facility" because of "[d]ocuments generated by . . . a telephone company." McShane Decl. Ex. 7 at 8. Plaintiffs Nickerman and Mark Haggard responded that defendants "were aware of the existence of Plaintiff" because plaintiff was an "employee of Remco and lives in the community." *Id*. Exs. 11 at 9, 15 at 9. Plaintiff Eljenia Haggard responded that defendants were aware of her "existence" because she "was a spouse of a 10 year employee of Remco." *Id*. Ex. 10 at 9. Plaintiff Michael Wells responded that defendants were aware of his "existence"

> [T]hrough business connections at the Bank of America branch in Willits where Plaintiff's father worked as an assistant manager, and where Mr. Earl Maize, one of the founders and an executive officer of Remco banked and had social contacts with Plaintiff's father. Defendants knew that Plaintiff and his family lived within close proximity of the Remco facility and thus were exposed to the discharge and dispersal of dangerous, hazardous and toxic substances.

*Id*. Ex. 22 at 9-10.

The remaining eight plaintiffs responded to Interrogatory No. 11 as follows, "Defendants were aware of the existence of each Plaintiff's presence in Willits near the Remco facility because its employees would instruct Plaintiffs who were present during the dumping of hazardous wastes to cease playing, to move away and vacate the area." *Id*. Exs. 8, 9, 12, 13, 14, 16, and 17 (Carolyn Crowell; Roy Elliot; Irene Hall; Paula Magana; Lorraine Montano; Joan Palango; Jason Verdot; and Paulina Verdot).

Finally, in response to Interrogatory No. 12, which requested that plaintiffs identify all evidence showing defendants were "aware or substantially aware that each Plaintiff would suffer severe emotional injury when allegedly engaging in the conduct" giving rise to plaintiffs' IIED claims, plaintiffs variously described defendants' alleged practices of "failing to train and protect their employees and their families" and "dumping hazardous substances and chemicals in and around Willits even after they were placed on notice by various public agencies that such conduct constituted a willful disregard for the health and safety and welfare of Plaintiffs." *Id*. Exs. 7-22 at 12.

The Court finds that plaintiffs' interrogatory responses are deficient and do not comply with the Court's April 5, 2007 order. Despite repeated admonitions against doing so, plaintiffs continue to provide general and vague responses and to direct defendants to masses of documents. For example, it is wholly improper to answer an interrogatory asking for "all facts, evidence and documents" showing

4

that defendants directed conduct giving rise to plaintiffs' IIED claims at each plaintiff by answering that "defendants, through their actions and omissions, intentionally caused [individual plaintiff] to suffer emotional distress. The actions and omissions are contained in the depositions of former Remco employees, documents produced to Defendants in the related '*Avila*' case and documents contained in litigation with the City of Willits, litigation with the Defendants' insurance carriers, and releases [sic] from the Water Board, Air Board and the City of Willits." Neither defendants nor the Court should be expected to comb through literally thousands of pages of documents searching for documents that might support plaintiffs' IIED claims. The interrogatory responses that are marginally more specific, such as the responses stating that "REMCO employees" would "warn" certain plaintiffs and tell them to stay away still lack basic, specific details such as dates and the names of the Remco employees who allegedly gave these "warnings."

### C. Document requests

Defendants propounded three corresponding document requests seeking all documents supporting plaintiffs' IIED claims. Defendants requested that each plaintiff produce "All DOCUMENTS . . . that relate to, refer to, evidence or support YOUR contention that each Defendant":

- "directed the alleged conduct described [in the IIED portion of the Complaint] at each Plaintiff asserting a claim for [IIED] or engaged in such alleged conduct in each such Plaintiff's presence." McShane Decl. Ex. 3 (RPD No. 55)

- "was aware of each Plaintiff's presence when allegedly engaging in the conduct described in [the IIED portion] of the COMPLAINT." *Id.* (RPD No. 56)

- "was aware or substantially certain that each Plaintiff asserting a claim for [IIED] would suffer severe emotional injury when allegedly engaging in the conduct described in [the IIED portion] of the COMPLAINT." *Id.* (RPD No. 57).

Each plaintiff responded the same response:

All such documents known to the Plaintiff are on disk and labeled on the index sheets at item numbers "1" and "3" or provided in hard copy format. See in particular the declaration of Ann Farr filed to the federal court on 2/9/98, Water Board CAO 98-59; the Declaration of Nickerman supplied in response to Requests 6 and 14; the documents provided in opposition to Defendant's Motion for Partial Summary Judgment re Cause of Action for Intentional Infliction of Emotional Distress.

McShane Decl. Exs. 23-38.

Plaintiffs' response violates the Court's April 5, 2007 discovery order by referring defendants

5

1 to masses of unspecified documents. In addition, as defendants correctly note, this Court has 2 specifically found that the "documents provided in opposition" to defendants' motion for summary 3 judgment on the *Avila* plaintiffs' IIED claims were insufficient to support those IIED claims. *See* 4 January 10, 2007 Order Granting Defendants' Motion for Summary Judgment on Intentional Infliction 5 of Emotional Distress Claims, Docket No. 758 at 8, *Avila et al. v. Willits Environmental Remediation* 6 *Trust*, C 99-3941 SI ("The Court further finds that even if plaintiffs were permitted to augment the 7 record with the evidence they have submitted in support of their opposition, summary judgment in favor 8 of defendants would nevertheless be warranted.").

## LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

6

**DISCUSSION**

Defendants contend that plaintiffs have not met their burden to present sufficient evidence on a key element of their claim for intentional infliction of emotional distress: that defendants' conduct was directed at these particular plaintiffs or that defendants were aware, but engaged in reckless disregard, of the plaintiffs and the probability that they would suffer severe emotional distress. Defendants argue that plaintiffs have not submitted any evidence showing (1) either defendant intentionally directed its conduct at any plaintiff with the intent to inflict injury; (2) either defendant knew of the presence of any plaintiff at the time of any release of any hazardous substance; (3) either defendant knew that any plaintiff was exposed to any contaminant released from the Remco site; or (4) either defendant knew that any plaintiff was substantially certain to suffer injury or severe emotional distress as a result of such defendant's conduct.

Under California law, "the elements of the tort of intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct . . . . The defendant must have engaged in 'conduct intended to inflict injury or engaged in with the realization that injury will result.'" *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991) (*quoting Davidson v. City of Westminster*, 32 Cal.3d 197, 209-10 (1982)). "It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen*, 54 Cal.3d at 903.

Relying on *Potter v. Firestone Tire & Rubber Company*, 6 Cal.4th 965 (1993), plaintiffs argue that they do not need to have evidence that defendants acted with knowledge of these particular plaintiffs. Instead, plaintiffs argue that *Potter* recognized three different theories of bringing an IIED claim: "that defendants' misconduct was directed primarily at plaintiffs, *or* that it was calculated to cause them severe emotional distress, *or* that it was done with knowledge of their presence and with a substantial certainty that they would suffer severe emotional injury." *Potter*, 6 Cal. 4th at 1003 (emphasis added). Plaintiffs contend that their IIED claims are viable under the first two "alternate theories" because,

7

> [I]t should be eminently clear at this point that the defendants acted in a "calculated" manner to injure these plaintiffs. Defendants intended for the citizens of Willits to be injured so that they could make their money and not be subject to the cost of environmental protections. It doesn't get much more "calculated" than that. . . . Similarly, under the second theory, defendant's conduct is "directed primarily at the plaintiff." The analysis is virtually the same as above. Defendants knew that the plaintiffs were there in the city of Willits. There is no duty under this theory to prove that the defendants were "aware of the presence of any particular plaintiff."

Plaintiffs' Opposition and Cross-Motion at 20:14-24. In so arguing, plaintiffs apparently concede that they do not have any evidence that defendants directed any conduct at these particular plaintiffs either with the intent to cause harm, or in reckless disregard of the probability of causing harm. Instead, plaintiffs contend that because defendants intended for the "citizens of Willits" to be harmed, plaintiffs can proceed with their IIED claims.

Plaintiffs' arguments patently lack merit. *Potter* does not recognize an IIED claim based on general misconduct. To the contrary, *Potter* held that the *only* exception to the general rule limiting claims of intentional infliction of emotional distress to egregious conduct *toward plaintiff* is "when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff." *Potter*, 6 Cal.4th at 1001-02. In *Potter*, the plaintiffs were residents who lived adjacent to a landfill at which the dumping of toxic substances was prohibited. For a number of years Firestone disposed of toxic wastes at the landfill, despite its knowledge that the disposal of such substances was prohibited. *Id.* at 975-76. The plaintiffs discovered that toxic chemicals had contaminated their domestic water wells, and sued Firestone for, *inter alia*, intentional infliction of emotional distress. *Id.* at 976. The trial court found in favor of the plaintiffs and held Firestone liable for intentional infliction of emotional distress because documents showed that Firestone knew of the dangers of toxic waste, and knew that the landfill prohibited the disposal of such substances, and yet Firestone continued to dispose of its waste at the site. *Id.* at 977.

The California Supreme Court remanded the plaintiff's intentional infliction of emotional distress claim, and found that it was "questionable" whether the record supported a finding of Firestone's liability on that claim. The court noted that it was ambiguous whether the lower courts had determined that "Firestone's conduct was directed at these particular plaintiffs in the sense intended by *Christensen*."

> Although the Court of Appeal correctly rejected Firestone's contention that Firestone was not liable because it did not know the particular names of any individual whose groundwater was contaminated by the hazardous waste, it is unclear whether it believed that Firestone was actually aware of these particular plaintiffs and their consumption and use of the water.
>
> Furthermore, it is questionable whether the trial court made a finding that Firestone possessed the requisite knowledge, and if so, whether such a finding would be supported by substantial evidence. Although the trial court concluded that Firestone "had to realize" that the eventual discovery of the toxic contamination "by those drinking the contaminated water would almost certainly result in their suffering severe emotional distress," this may be interpreted in one of two ways. First, this may have been a finding that Firestone actually knew of these particular plaintiffs and their consumption of the water, and nevertheless sent prohibited wastes to Crazy Horse [landfill] despite a realization that plaintiffs would almost certainly suffer severe emotional distress upon their discovery of the facts. Alternatively, this may have been a finding that Firestone had to have realized that its misconduct was almost certain to cause severe emotional distress to any person who might foreseeably consume the water and subsequently discover the facts. Although the knowledge requirement is met in the first interpretation of the court's ruling, it is not satisfied under the second because knowledge of *these particular plaintiffs* is lacking.

*Id.* at 1002-03 (emphasis in original). Directly after this passage is the excerpt relied on by plaintiffs:

> This conclusion is consistent with the result reached in *Christensen*, *supra*, 54 Cal.3d 868, itself. There we held that, even though it was alleged that defendants' conduct in mishandling the remains of deceased persons was intentional and outrageous and was substantially certain to cause extreme emotional distress to relatives and close friends of the deceased, the plaintiffs' cause of action for intentional infliction of emotional distress was not sufficiently supported where there was no allegation that the defendants' misconduct was directed primarily at plaintiffs, or that it was calculated to cause them severe emotional distress, or that it was done with knowledge of their presence and with a substantial certainty that they would suffer severe emotional injury. (*Christensen*, *supra*, 54 Cal.3d at ¶. 903, 906.)

*Id.* at 1003. Thus, *Potter* makes clear that a plaintiff asserting an IIED claim must show that the defendant's conduct was directed at that particular plaintiff.

Under the guidance of *Potter*, the Court concludes that plaintiffs have failed to submit any evidence showing that defendants "actually knew of these particular plaintiffs and their consumption of the water, and nevertheless [continued to dispose of chromium] despite a realization that plaintiffs would almost certainly suffer severe emotional distress upon their discovery of the facts." *Id*. at 1002-03. Plaintiffs' discovery responses repeatedly assert that Remco knew or should have known about

9

1 plaintiffs' exposure and risk, which under *Potter* is insufficient.[3] In addition, to the extent that plaintiffs
2 rely on the interrogatory responses submitted by the *Avila* plaintiffs in the *Avila* case, the Court finds
3 those responses insufficient for all of the reasons set forth in that order.  Moreover, as defendants note,
4 the *Avila* plaintiffs' discovery responses cannot, by definition, show that defendants acted with
5 knowledge of, and with intent to harm, *the Nickerman plaintiffs*.  Plaintiffs have also submitted
6 considerable "evidence" that defendants improperly disposed of hazardous wastes at the Remco facility,
7 in the storm drains outside the facility, and at certain offsite areas within the Willits community.  Even
8 accepting this evidence as true, none of this evidence shows that any plaintiff was present during the
9 alleged releases, or that defendants were aware of plaintiffs' presence at that time.

10 Plaintiffs' showing is more akin to the situation described in *Potter* in which a defendant "had
11 to have realized that its misconduct was almost certain to cause severe emotional distress to any person
12 who might foreseeably consume the water and subsequently discover the facts." *Potter*, 6 Cal.4th at
13 1003.  As the *Potter* court held, such a theory would support a claim for negligent infliction of emotional
14 distress, but not intentional infliction of emotional distress.  *Potter* emphasized that a plaintiff asserting
15 a claim for intentional infliction of emotional distress faced a heavy burden to establish the defendant's
16 knowledge "of these particular plaintiffs." *Id.* at 1003.

17 Plaintiffs' "cross-motion" seeks a separate ruling on the other elements of plaintiffs' IIED
18 claims, namely that defendants engaged in outrageous conduct and that plaintiffs have suffered severe
19 emotional distress.  Because the Court holds that plaintiffs have failed to raise a triable issue of fact as
20 to an essential element of the IIED claims, there is no reason to reach these issues.

21 Plaintiffs' "cross-motion" also seeks to amend the complaint to allege "the established tort of
22 willful misconduct and the proposed new tort of malicious toxic exposure proposed by Justice Kennard
23 of the California Supreme Court."  Plaintiffs' Opposition and Cross-Motion at 28:21-23.  Plaintiffs'
24 request is procedurally improper, and if plaintiffs wish to amend the complaint, they must comply with

---

[3] As stated *supra*, certain plaintiffs responded to Interrogatory No. 11 by stating that "employees would instruct Plaintiffs who were present during the dumping of hazardous wastes to cease playing, to move away and vacate the area."  Even accepting these statements as true, these responses would undermine plaintiffs' IIED claims because they show that Remco employees did not intend to expose plaintiffs when dumping hazardous wastes.

10

the Civil Local Rules and file a duly-noticed motion for leave to amend the complaint. Accordingly, the Court DENIES plaintiffs' request without prejudice to its renewal in a proper motion.[4]

**CONCLUSION**

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment (Docket No. 118) and DENIES plaintiffs' motion. (Docket No. 127).

The Court SUSTAINS defendants' objections to portions of the Simpich Declaration as irrelevant and containing inadmissible hearsay. (Docket No. 157). The Court DENIES plaintiffs' requests for judicial notice. (Docket Nos. 140, 143 & 145). It is improper to take judicial notice of findings of fact in another legal proceeding. *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003). In any event, the findings of fact from *People v. Remco*, C 96-283 FMS are irrelevant to the resolution of plaintiffs' IIED claims. Similarly, while it is improper to take judicial notice of the "facts" contained in various reports submitted by plaintiffs, even if the Court considered those "facts," they do not bear on the questions presented here. Finally, the Court finds it unnecessary to address defendants' specific objections to numerous exhibits attached to the Simpich and Tsadik declarations because, even if these documents were admissible, they do not show that defendants directed any conduct at these particular plaintiffs.

**IT IS SO ORDERED.**

Dated: November 13, 2007

SUSAN ILLSTON
United States District Judge

---

[4] The Court is skeptical, however, about the merits of such a motion in light of the fact that this case has been pending for a year and a half and the parties have engaged in considerable discovery and motion practice. Further, plaintiffs do not explain how the "willful misconduct" claim is different from their "gross negligence" claim, nor do plaintiffs present a convincing argument for the addition of an admittedly new tort not currently recognized by the California Supreme Court.

11